# EXHIBIT "B"

Aaron Wider

1                          **Wider**

2 **Boulevard titled?**

3       A.    It's a trust.

4       **Q.    What's the name of the trust?**

5       A.    Wider Family Trust.

6       **Q.    Who are the trustees of Wider**

7 **Family Trust?**

8       A.    What is your relevancy to this

9 question?

10      **Q.    That's not --**

11      A.    It has everything -- what does my

12 home --

13      **Q.    Excuse me, sir.**

14            MR. ZICCARDI:  Don't answer.

15      **Q.    That's not for you to ask.**

16      A.    It's none of your business.  That's

17 my answer.

18            MR. ZICCARDI:  Hold on.  Hold

19      on.

20      **Q.    Excuse me.  If your counsel has**

21 **objections to my questions, your counsel can**

22 **raise objections.**

23            **In the absence of an objection or**

24 **instruction from your counsel, you have to**

25 **answer my questions; do you understand that?**

**Aaron Wider**

Page 13

1                          **Wider**

2     A.     Well, now I'm -- now I'm getting an

3 adverse reaction to my medication.  So that's

4 my answer right now.  I have to take ten

5 minutes off because I'm getting very, very

6 nervous.

7            It's the trustee of my father -- my

8 father's estate.

9     **Q.     Hold on.**

10    A.     I have to get up for a second,

11 please.

12    **Q.     Well, you can do that.**

13    A.     He's actually prying into the death

14 of my father and I reject him.  Just give me a

15 couple of minutes.

16            You're actually very -- you're

17 pissing me off right now.

18            MR. BODZIN:  Okay.  We're going to

19     go off the record then.

20            THE VIDEOGRAPHER:  The time is

21     9:22 a.m.

22            We're going off the record.

23            THE VIDEOGRAPHER:  The time is

24     9:27 a.m.

25            We're back on the record.

Aaron Wider

Page 14

```
 1                    Wider

 2     Q.    Mr. Wider the question was who were

 3  the trustees of the Wider Family Trust?

 4               MR. ZICCARDI:  I'm going to

 5  object    to that because I don't think that

 6  has  any bearing on any of the tissues of this

 7      case.  It's certainly not relevant.  That

 8      property is not an issue in this case.

 9      So I don't see why that is in any way

10      relevant to the allegations --

11            MR. BODZIN:  Are you instructing

12      him not to answer the question?

13            MR. ZICCARDI:  -- that we're here

14      for today.

15            MR. BODZIN:  Are you instructing

16      him not to taken the question?

17            MR. ZICCARDI:  I'm asking why is

18      that relevant.

19            MR. BODZIN:  I think it's evident

20      why it's relevant.  The ownership of all

21      of his properties is relevant and if

22      you're going to instruct him, please

23      instruct him and we'll get on to the next

24      question.

25            MR. ZICCARDI:  Aaron Wider is not
```

**Aaron Wider**

```
 1                    Wider
 2     an individual defendant in this case.
 3          MR. BODZIN:  Are you instructing
 4     him not to answer the question?
 5          MR. ZICCARDI:  He's going to answer
 6     that question.
 7          MR. BODZIN:  Okay.  So you're
 8     instructing him  not to answer the
 9     question?
10          MR. ZICCARDI:  Whether I instruct
11     him or not, I don't think he's going to
12     answer it.
13          MR. BODZIN:  If you don't instruct
14     him, then I'm going to ask him the
15     question again.
16 DI.      MR. ZICCARDI:  I'm instructing him
17     not to answer the question.
18          MR. BODZIN:  Okay.
```

19     **Q.    Now, where are you currently**
20 **employed?**

21     A.    I'm not.  I work for free.  All my
22 money goes to charity.

23     **Q.    I didn't ask you where your money**
24 **goes to.**

25          **I asked you --**

**Aaron Wider**

1                          **Wider**

2        A.    I'm answering your question.

3        **Q.    I asked where you're currently --**

4        A.    That's my answer.  I answered your

5   question.

6        **Q.    Sir, you have to --**

7        A.    Get used to it.

8        **Q.    Sir, you're going to have to wait**

9   **until I finish my question before you answer**

10  **because the court reporter cannot take down**

11  **both of us talking at the same time and if**

12  **you're not courteous to me, you should at**

13  **least be courteous to the court reporter.**

14                **My question is where are you**

15  **currently employed?**

16       A.    I'm not.  I just told I work for

17  free.

18       **Q.    Okay.  You're not employed by HTFC**

19  **Corporation?**

20       A.    No, I own HTFC Corporation.

21             Be specific.

22       **Q.    Okay.  And what do the initials**

23  **HTFC mean?**

24       A.    Hit That Fuckin' Clown.  That's

25  what it means.  It's an acronym.

Aaron Wider

1                          Wider

2        Q.      **Are you a hundred percent**

3   **shareholder of GCF Development Corporation?**

4        A.      No, I've got about 10,000

5   shareholders.  It's a corporation.

6        Q.      **And GCF Development Corporation**

7   **is --**

8        A.      A holding company.

9        Q.      **-- a holding company for what**

10  **companies?**

11       A.      A holding company, assets.  I

12  didn't say anything about companies.  You did.

13       Q.      **What is the business of GCF**

14  **Development Corporation?**

15       A.      I just told you.  It's a holding

16  company.

17       Q.      **For what?**

18       A.      For assets.  None of your business

19  and what type of assets.

20       Q.      **Sir, I would --**

21       A.      Your question for the record has

22  nothing to do with --

23               MR. ZICCARDI:  Don't argue.

24               THE WITNESS:  I'm not arguing.

25       Q.      **What types of assets does GCF**

Aaron Wider

Page 27

1                         **Wider**

2   **Development Corporation --**

3        A.       None of your business.  Your

4   question is irrelevant.  That's for the

5   record.

6        **Q.       You're refusing to answer the**

7   **question?**

8        A.       Absolutely.

9        **Q.       Okay.  Goes GCF Development**

10  **Corporation have its office at the same**

11  **location as HTFC Corporation?**

12       A.       Yes, it does.

13       **Q.       And that's 400 Garden City Plaza,**

14  **suite 420?**

15       A.       Yes.

16       **Q.       Are you familiar with the various**

17  **properties that are the subject of this**

18  **lawsuit?**

19       A.       Yes, I am.

20       **Q.       And --**

21       A.       Well, no.  There's a lot of

22  properties outside of the State of New York

23  that were thrown in for no reason.  I'm not

24  familiar with them.

25       **Q.       I'm just asking are you familiar**

Aaron Wider

Page 28

```
 1                        Wider
 2  with the properties.
 3       A.     Like do I know them?
 4              Are they my best friend?
 5              Am I associated with them?
 6              Please be specific.
 7       Q.     Do you know --
 8       A.     No, I don't know.  Be specific.
 9              MR. ZICCARDI:  Let him finish the
10       question.
11       Q.     Sir, if you can't be a little more
12  civil --
13       A.     I am very civil.
14       Q.     -- in how you respond to my
15  questions --
16       A.     I am very civil.
17       Q.     What we can do is we can have this
18  deposition in front of the judge.
19       A.     We can do that.
20       Q.     And the judge can --
21       A.     Let's do that.
22       Q.     No, no.  We're not going to --
23       A.     Let's do that, this way he can rip
24  your ass out.
25       Q.     We're not going to do that, sir,
```

Aaron Wider

Page 29

```
 1                      Wider
 2 okay.
 3      A.    Then don't fuckin' threaten me,
 4 asshole.
 5      Q.    Well, sir, I would appreciate it if
 6 you would control your language in light of
 7 the people that are present in the room and I
 8 would appreciate it if you would be a little
 9 more courteous, okay.
10      A.    I'm very courteous.
11      Q.    Okay.  Now --
12      A.    Let's go in front of a judge and
13 shut up.
14      Q.    Sir --
15      A.    Shut your mouth.
16      Q.    My question --
17      A.    Don't threaten me.
18      Q.    My question is --
19      A.    My question is go in front of a
20 judge and stop threatening me.
21      Q.    I'm not threatening you, sir.
22      A.    Then shut up.
23      Q.    What I'm telling you is that if you
24 can't --
25      A.    I can.  If you don't like my
```

**Aaron Wider**

Page 30

```
 1                     Wider
 2  response --
 3      Q.    No, no, sir.
 4      A.    -- then note that I'm refusing to
 5  answer it.
 6      Q.    Sir.
 7      A.    Deal with it because this is how
 8  it's going to be like clock work.
 9      Q.    All right, sir.
10      A.    And I'll tell you what uncivil and
11  what uncourteous is.
12            Telling you to go fuck yourself is
13  uncivil.
14            If you ask a question, I'm going to
15  give you a response.
16            If you pry into my father's death,
17  I'm going to give you a response.
18            If you fuck with my mental illness,
19  I'm going to give you a response.
20            And if you threaten me to put in
21  front of a judge, let's do it.  I got all the
22  time in the day, all the time in the day and
23  the judge will restrain you.
24      Q.    Are you done, sir?
25      A.    No, I'm not.  We're just beginning.
```

**Aaron Wider**

```
 1                        Wider
 2       A.    Okay.
 3       Q.    Okay.  And according to the deeds
 4 recorded in this property, on March 7, 2005
 5 you purchased the property, Aaron Wider
 6 purchased the property from a Kim McCormack
 7 for $525,000.
 8       A.    Okay.
 9       Q.    On that same day, March 7, 2005,
10 the property was conveyed by Aaron Wider to
11 the McCormack trust.
12       A.    Okay.
13       Q.    And then on that same day, March 7,
14 2005, the McCormack trust conveyed the
15 property to Aaron Wider for purchase price of
16 $1,150,000.
17       A.    Okay.
18       Q.    Okay.  Can you tell me what the
19 purpose was of those transactions that I just
20 described?
21       A.    I'm a doctor of law.  I'm a
22 teacher, okay, and it's clearly indicative of
23 what exactly transpired.  Nothing illegal
24 happened.  This is the law.  I don't need to
25 dictate to you the law.  This is law school
```

**Aaron Wider**

Page 65

1                    Wider

2 101.  This is trust law.

3            The property was sold.  The

4 property was purchased at a distressed price.

5 People go out and sell it.  Actually, this is

6 the daughter of a person who went to prison.

7 So I got the property at a bargain on order.

8 All right.  What I buy the property for, what

9 I sell the property for is my personal

10 business.  What I collateralize the loan  at,

11 is my personal business.  What somebody

12 chooses to buy and what somebody chooses to

13 deflect and not buy is their personal

14 business.

15      Q.      **What was the purpose --**

16      A.      None of your --

17      Q.      **For buying a property for $525,000**

18 **and on the same day conveying it to a trust**

19 **and then conveying it back to you for**

20 **$1,150,000?**

21      A.      None of your business.

22      Q.      **No, is is my business.**

23      A.      It's none of you business.  This is

24 the law.  Look it up.

25      Q.      **My question is what is your**

**Aaron Wider**

Page 66

1                          **Wider**

2 **purpose?**

3       A.    I'm answering your question, okay.

4 I'm a doctor of law.  I'm not hear to teach

5 you.  You come to my university, you pay for

6 it.  It's on a need-to-know basis.  You don't

7 need to know.

8       **Q.    Sir.**

9       A.    This property -- sir, this is paid

10 off.  It came in, it went out the door.

11            I'm not here to tell you my inside

12 trade secrets so you can go out and exploit

13 it.  It's not going to happen.  Tell

14 management at GMAC it's not going to happen.

15 I'm not here to write your quality control

16 department for GMAC, and that's exactly what

17 you're -- you don't know how -- I'll tell you

18 what.  I'm going to get this off my chest,

19 okay.

20            I am being videotaped because I'm a

21 freakin' genius and they know it.  They don't

22 know how and why I do certain things and I'm

23 not here to explain it to them because they're

24 not going to copy my procedures and try to

25 inhibit their quality control procedures out

Aaron Wider

Page 67

1                    Wider

2 on the general public at my expense.

3              So the answer to your question is

4 there is no answer.  I'm not here to educate

5 you.

6              You want to be educated, you spend

7 $10 million and I'll educate you.  You tell

8 that -- you send that back to senior

9 management because I'll tell you what.  Senior

10 management can't explain it.  You can't

11 explain it and nobody can explain it.

12              You want to know why?

13              Because I'm the professor.  I'm the

14 one who wrote the book.  So senior management

15 doesn't know how I do certain things.

16              Guess what?

17              That's why they're $200 billion in

18 debt and that's a matter of public record.  I

19 have $300 million in surplus and this debt

20 existed before the market crashed.  So they

21 want to know how to get out of the market.

22 Now, if they want to know how to get out of

23 the market, they can pay me $10 million and

24 they can settle with me for $50 million.  Now,

25 if you don't have a checkbook here today, no

**Aaron Wider**

Page 68

1                           Wider

2 matter what you ask me, this is not going to

3 be answered.  This is the law.  Nothing

4 illegal has been done.  I'm not going to

5 explain the law to you.  If you have a problem

6 with that, you can try to get a court order

7 from a judge and he'll laugh at you.  That is

8 my response.

9       **Q.     Are you done with your answer?**

10      A.     Yes, I am.

11      **Q.     On March 7, 2005, did you purchase**

12 **2821 Beach Avenue for $525,000, convey it to a**

13 **trust and then have the trust convey it back**

14 **to you for $1,150,000 for the purpose of**

15 **inflating the value of the property to obtain**

16 **a mortgage?**

17      A.     For the purpose of inflating?

18             I want you to prove that before you

19 ask the question.  Prove it.

20      **Q.     My question is did you do that?**

21      A.     No,  I did not.

22      **Q.     Okay.  Sir, what was the purpose**

23 **for --**

24      A.     None of your fuckin' business.

25             MR. ZICCARDI:  Objection.

**Aaron Wider**

1              Wider

2          It's been asked and answered,

3     but...

4          THE WITNESS:  So if he asked the

5     same question like a clown, I'm going to

6     treat him like a clown.  I've got all

7     day.

8          MR. ZICCARDI:  Just say "no".

9     A.    Inflating?

10         You're going to have to prove that

11 in criminal court, my friend.  So don't make

12 an allegation that you can't prove.

13         Your underwriters wrote this file.

14         How can it be inflated if your guys

15 say yes?

16         You represent GMAC.  You underwrote

17 the file.  I'm not delegated on this file.

18 There's a commitment issued by your senior

19 underwriters signed by senior management and

20 your people approved it, so I inflated it?

21    Q.    **So, sir, is it your view that you**

22 **can commit a fraud and as long as GMAC**

23 **purchases a mortgage where you've committed a**

24 **fraud, there's not accountability; is that**

25 **what you're saying?**

**Aaron Wider**

Page 70

```
1                    Wider
2          MR. ZICCARDI:  Hold on.
3          I'm going to object to that.
4          MR. BODZIN:  I'll withdraw the
5     question.
6          MR. ZICCARDI:  Yeah.
7          MR. BODZIN:  I'll withdraw the
8     question.
9     Q.    So who created the McCormack Trust?
10    A.    I don't know.  I got 10,000 people
11 that work for me.
12    Q.    Now, if you'll take a look again at
13 the file, you'll see that there's an appraisal
14 performed by Mr. Mirando and supposedly
15 performed by Mr. Jonason on this property that
16 shows an appraised value of $1,155,000.
17          Could you take a look at those,
18 please?
19    A.    If you decided to charge me $550 an
20 hour with going rates -- I'm not done.  I'm
21 going to answer his question.
22          As an attorney that decides to
23 charge me $550 for superior services versus
24 the going rate of $250, does that justify you
25 as being fraud or my being a freakin' comic?
```

Aaron Wider

Page 71

1                    Wider

2 I am the best of this business, the best of

3 this business.

4          Your $200 billion deficit is not

5 from my fraud.

6     Q.    **Can you take a look at those**

7 **appraisals?**

8     A.    I can't see it.  There's no -- I

9 can't see it.

10    Q.    **It's right in front of you.**

11    A.    I can't see it.  I can't see it

12 right now.

13          Remember, I have a mental problem.

14 I told you about that.  If there was a

15 problem.  There's a problem right now.

16 There's a problem right now.

17    Q.    **What's the problem?**

18    A.    The problem is I'm having a -- I'm

19 having hypertension, all right.  And you're

20 not a doctor, so I'm going to stop for about

21 two minutes.  Take a break.

22    Q.    **That's fine.**

23          THE WIDER:  I can't see, Ray.

24          MR. ZICCARDI:  Do you want to go

25    out in the hall?

**Aaron Wider**

Page 93

1                    Wider

2          Remember, I have a psychiatric

3    condition, so that would substantiate your

4    allegation to your question.

5      Q.    **Did you purchase this property to**

6    **occupy as your primary residence?**

7      A.    Does it say that?

8      Q.    **I'm asking you.**

9      A.    I'm responding.

10           Does it say that?

11           If I've lived in the same house for

12   five-and-a-half years, it's obvious that you

13   already know.  So you're either stupid or

14   you're playing games.

15     Q.    **Now, this property was purchased by**

16   **you on June 21, 2005 for $535,000.**

17     A.    Right.

18     Q.    **It was then conveyed to the -- on**

19   **the same date to something called the Santolli**

20   **Family Trust.**

21     A.    Okay.

22     Q.    **And then from the Santolli Family**

23   **Trust to you for $980,000?**

24     A.    Okay.

25     Q     **What is the purpose of that**

Aaron Wider

Page 94

```
 1                      Wider
 2 transaction?
 3      A.    Well, I have a psychiatric
 4 condition and because -- because I have a
 5 psychiatric condition I just go out there and
 6 exercise my legal rights to the law.  None of
 7 your fuckin' business.
 8      Q.    That's the purpose of that
 9 transaction, sir.
10      A.    None of your fuckin' business.
11      Q.    Okay.
12      A.    It's a business decision.
13      Q.    And according to the HUD statement,
14 the cash that went out in that transaction to
15 the seller was $955,780.
16            So that would have been paid to
17 Mr. Petiton as the trustee of the Santolli
18 Family Trust?
19      A.    That's right.  He's a trustee.
20      Q.    Okay.  And if you look at the name
21 and address of the seller, it's Santolli
22 Family Trust, 32 Shore Drive.
23            That's the same address as the
24 property, correct?
25      A.    It's the law.  Don't ask me about
```

**Aaron Wider**

1                          Wider

2   the law.  I'm not a practicing attorney.

3        **Q.**    **I'm not asking you about the law.**

4             **I'm just asking if that's what it**

5   **says.**

6        A.    That's the law.

7        **Q.**    **Okay.**

8        A.    Obviously the person selling the

9   property needs to use the address of where

10  they sold the property from.

11       **Q.**    **Okay.  And was that trust created**

12  **for your benefit?**

13       A.    I have no idea.

14       **Q.**    **Well, whose benefit was it created**

15  **for?**

16       A.    How could I -- how could I create a

17  trust on a property I don't even own.

18       **Q.**    **Sir, you paid --**

19       A.    Sir --

20       **Q.**    **You paid --**

21       A.    Sir, I'm answering your question.

22       **Q.**    **You paid --**

23       A.    You practice law for GMAC and you

24  don't even know what you're asking.

25       **Q.**    **Sir, you paid $955,780 on a**

Aaron Wider

Page 97

```
 1                    Wider
 2      Q.    And you had nothing to do with the
 3 creation of the Santolli Family Trust?
 4      A.    I have nothing to do with the
 5 creation of any trusts.
 6      Q.    It's just a coincidence that
 7 Mr. Petiton happens to be the trustee of that
 8 trust?
 9      A.    That's right.
10            MR. ZICCARDI:  I'm going to object
11      to the foundation.
12      Q.    And it would be a coincidence if he
13 happened to be the trustee on many of the
14 intermediary parties that are utilized in
15 connection with the loans that are the subject
16 of this lawsuit?
17            MR. ZICCARDI:  I'm going to
18      object to that as irrelevant.
19      Q.    It's a coincidence?
20      A.    Did you hear what he said?
21      Q.    Is it a coincidence?
22      A.    Did you hear what he said?
23      Q.    No, I'm asking you the question.
24      A.    Did you hear what he said?
25            MR. ZICCARDI:  How is he supposed
```

Aaron Wider

Page 98

1              Wider

2      to respond what is a coincidence, what is

3      or what is not a coincidence?

4          MR. BODZIN:  Are you telling him

5      not answer the question?

6          MR. ZICCARDI:  The question is

7      vague.  It's impossible for him to

8      answer.

9      Q.    Is it a coincidence that

10 Mr. Petiton is the trustee of the trusts that

11 are the intermediary parties in these

12 transactions?

13          MR. ZICCARDI:  Same objection.

14     A.    Isn't the law wonderful, counselor?

15     Q.    Are you going to answer the

16 question, sir?

17     A.    That's my answer.  My attorney

18 answered for me.

19     Q.    Well, that's not an answer, sir?

20     A.    Yes, it is.  Welcome to New York.

21     Q     Do you know a Teresa Maretta?

22     A.    No.

23     Q.    M-a-r-e-t-t-a.

24     A.    No.

25     Q.    Have you discussed this case with

**Aaron Wider**

Page 250

1                          **Wider**

2      A.    Because if you --

3      **Q.    Because that's the pattern that you**

4  **usually follow.**

5            MR. ZICCARDI:  Objection.

6      A.    That's not the pattern.

7            MR. ZICCARDI:  Let's not.

8            THE WITNESS:  You want me to

9      respond?

10           MR. ZICCARDI:  No.

11     **Q.    This one it says it's for zero.**

12     A.    It's not the pattern.  That's the

13  law.  You don't convey to yourself for any

14  consideration.

15           People like you who aren't educated

16  would pay taxes on something they don't have

17  to.  That's the law.

18     **Q.    Okay take a look at the --**

19     A.    The pattern of not paying a tax on

20  something is smart.  Stupid people --

21     **Q.    Take a look at the next deed.**

22     A.    I must say, the most stupidest man

23  I ever met.

24           MR. ZICCARDI:  Look at.

25     A.    I'm looking at.

**Esquire Deposition Services**
**(215) 988-9191**

Aaron Wider

Page 251

```
 1                        Wider
 2        Q.      October 13, 2004 John Petition as
 3   trustee to Frank Mancuso residing at 4 Jonwell
 4   Court Dix Hills, New York?
 5        A.      What about it?
 6        Q.      Well, do you know the purpose for
 7   these transactions?
 8        A.      Why the fuck would I know that?
 9        Q.      I'm just asking you whether you
10   know.
11        A.      Why the fuck would I know that?
12        Q.      I'm asking whether or not you know
13   that.
14        A.      It's got nothing to do with the
15   transaction.
16                Don't ask stupid questions.  Ask
17   smart questions.
18        Q.      So if Mr. Petiton were to say that
19   he knew the purpose of these transactions that
20   you knew --
21        A.      It doesn't make a difference.
22        Q.      -- he'd be lying?
23        A.      I don't give a flying fuck what
24   he's lying about.  It has no bearing.
25                Stick to the here and now, you'll
```

**Aaron Wider**

Page 252

```
 1                      Wider
 2  get out of here quicker because I'll take
 3  months.  You'll be back and forth.  I'll make
 4  your life miserable.  Trust me.  You'll be
 5  drinking breakfast, lunch and dinner every
 6  day.  Start asking some real questions.
 7       Q.     All right.  So this --
 8       A.     You want to know what color I wipe
 9  my ass with?
10              I swear to you, my four-year-old
11  knows more than you.
12       Q.     You know, sir, I really restrained
13  myself from responding to your comments.
14       A.     Good, good.
15       Q.     And I will continue to do so.
16       A.     I'll tell you what.  It's my
17  constitutional right to tell you to go get dim
18  and I'm going to be shelling out of my ass
19  every two seconds you get out of line.
20              You have a problem with it?
21       Q.     You're certainly free to stay that,
22  sir.
23       A.     I sure am.  Start asking some real
24  question.
25       Q.     Okay.  Sir --
```

**Aaron Wider**

Page 253

1                          **Wider**

2      A.      Stop asking me about other people's

3 freakin' deeds and lives and how big their

4 dicks are and so on and so forth.

5      **Q.      So you weren't involved in flipping**

6 **the property at 207 North Rutherford Avenue?**

7      A.      I don't know.

8              Was I, counselor?

9      **Q.      I'm asking you.**

10     A.      I don't know.  Am I?

11             You're the smart one.

12     **Q.      Sir, were you involved in flipping**

13 **that property?**

14     A.      You tell me.

15     **Q.      Sir, I'm going to ask the**

16 **questions.  You're going to answer the**

17 **questions.**

18     A.      I just responded with a question.

19     **Q.      Were you involved in flipping the**

20 **property at 207 North Rutherford?**

21     A.      You tell me.  And you provide that

22 evidence to the court.

23     **Q.      It doesn't work that way, sir.**

24     A.      Yes, it does.  That's my answer.

25             Listen, we can go around in circles

Aaron Wider

Page 254

```
 1                    Wider
 2 and you'll end up with the same answer.  You
 3 tell me.  You're that good.  You're hired by
 4 GMAC.
 5      Q.    Sir, my question is, and I expect
 6 an answer.
 7      A.    I can't recall.
 8      Q.    Were you involved in flipping 207
 9 North Rutherford?
10      A.    I can't recall.
11            I'm involved in flipping you.
12      Q.    Do you know what flipping is?
13      A.    No, I don't.
14      Q.    You don't know what flipping is?
15      A.    No, I don't.
16      Q.    And you don't know about the
17 practice of taking a property and --
18      A.    No, I don't.
19      Q.    You don't even know what the
20 question is?
21      A.    I don't fuckin' give a shit.  It's
22 got no relevance.
23            MR. ZICCARDI:  Let him finish.
24      A.    I don't give a shit.  It's got no
25 relevance to the file.
```

Aaron Wider

Page 255

1          Wider

2     MR. ZICCARDI: Aaron.

3 A.   Talk about the file and move on.

4     MR. ZICCARDI: Aaron.

5 Q. **The loans that HTFC originated,**

6 **when they were presented for sale to GMAC,**

7 **Did you feel it was HTFC's obligation to let**

8 **GMAC know if you believed that the properties**

9 **had been flipped?**

10 A.   Absolutely. You have to understand

11 something. I have nothing to do -- I'm not

12 done with my answer. I am not responsible and

13 I don't give a flying fuck who buys what and

14 how many times it's flipped. If they've gone

15 to the auction, if it's a fire sale, a

16 sheriff's sale, if they bought the property

17 for a dollar, if they bought the property for

18 $20 million. As long as the value of the

19 property is there and the buyer can afford it

20 and it's done by the guidelines of the law, I

21 don't give a flying fuck and neither should

22 you. As long as it's done within the

23 guidelines of the law, borrower can afford --

24 the borrower can afford -- the borrower can

25 afford it, the assets are there and nothing is

Esquire Deposition Services
(215) 988-9191

**Aaron Wider**

Page 256

1                    Wider

2 done illegally, I don't give a shit if they

3 sell the property 80 -- I wouldn't care if you

4 sold the property to yourself for 20 million.

5          Who the fuck am I to question it

6 and who are you?

7     **Q.    As a delegated underwriter in**

8 **presenting loans for re-purchase to GMAC, it**

9 **wasn't --**

10    A.    For purchase, not re-purchase.

11    **Q.    -- for purchase to GMAC, it was of**

12 **no importance to you how often or for what**

13 **amounts the properties had been flipped, so**

14 **long as there was an appraisal that supported**

15 **the value, correct?**

16          MR. ZICCARDI:  Objection.

17          MR. BODZIN:  Is that right?

18          MR. ZICCARDI:  Objection.  Hold on.

19          MR. BODZIN:  Let's not have a

20     speaking objection.

21          If you have an objection to the

22     form of the question, make the objection.

23          MR. ZICCARDI:  It miss

24     characterizes the testimony.

25          MR. BODZIN:  Then object to the

**Aaron Wider**

```
 1                    Wider
 2      form and let him answer the question.
 3           MR. ZICCARDI:  I'm going to state
 4      my objection to the record.
 5           MR. BODZIN:  Don't make it a
 6      speaking objection because that's --
 7           MR. ZICCARDI:  I'll make any kind
 8      of objection I want.
 9           MR. BODZIN:  No, you won't.
10           You can object to the form.  That's
11      the only objection that's permissible.
12           MR. ZICCARDI:  Well, I can state
13      the objection for the record.
14           I mean, you're miss characterizing
15      his testimony.  He didn't say that.
16           MR. BODZIN:  I'm not characterizing
17      his testimony.
18           MR. ZICCARDI:  No, you are.
19           MR. BODZIN:  I'm going to ask the
20      question again and I'll ask it a
21      different way so as to make sure that I'm
22      not characterizing this witness's
23      testimony.
24           THE WITNESS:  Get his permission.
25           MR. BODZIN:  I don't need his
```

Aaron Wider

Page 258

1                    Wider

2      permission.

3                THE WITNESS:  Yes you do.

4      Q.    My question is in submitting loans

5 originated by HTFC for purchase by GMAC, was

6 it HTFC's policy that so long as there was an

7 appraisal that supported the value of the

8 property, it was not up to HTFC to report to

9 GMAC flip activity?

10               MR. ZICCARDI:  Same objection.

11               Go ahead.

12     A.    My attorney just told you to get

13 fucked and so did I.

14               MR. ZICCARDI:  No.

15     A.    Okay.  That's for the record.

16     Q.    First of all, your attorney didn't

17 tell me that.  You told me that and now you

18 can answer the question.

19     A.    Go get fucked.

20     Q.    You're not answering the question?

21     A.    I did answer your question.

22     Q.    No, that's not an answer to the

23 question.

24     A.    That's my answer to your question.

25     Q.    Okay.

**Aaron Wider**

Page 259

1                       **Wider**

2      A.     My attorney very nicely told you

3 that he objects.  Fuck you.  And I'm telling

4 you on behalf of my attorney, fuck you.

5              MR. ZICCARDI:  Let's take a break.

6              MR. BODZIN:  I think we need to

7        take a break.

8              MR. ZICCARDI:  Let's take a break.

9              THE VIDEOGRAPHER:  The time is

10        4:00 p.m.

11              We're going off the record.

12              THE VIDEOGRAPHER:  The time is

13        4:04 p.m.

14              We're back on the record.

15      **Q.     Who is the person currently**

16 **employed by HTFC with the greatest knowledge**

17 **of HTFC's underwriting practices?**

18      A.     Me.  I write my own policies.

19      **Q.     And who is the person at HTFC who**

20 **is most knowledgeable about the process to**

21 **follow for taking loan applications from**

22 **borrowers?**

23      A.     Well, since I'd say one one

24 thousandth of a percent of applications are

25 originated by us, really nobody because I only