IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GMAC BANK, | : | CIVIL ACTION |
| | : | NO. 06-5291 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HTFC CORP., | : | |
| | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    FEBRUARY 29, 2008

TABLE OF CONTENTS

I.   INTRODUCTION.. . . . . . . . . . . . . . . . . . . . 3

II.  BACKGROUND.. . . . . . . . . . . . . . . . . . . . . 3

III. MOTION TO COMPEL AND FOR SANCTIONS AGAINST WIDER.. . . . . . 4
     A.  Legal Standard. . . . . . . . . . . . . . . . . 4
     B.  Discussion. . . . . . . . . . . . . . . . . . . 6
         1.  Summary of Wider's conduct.. . . . . . . . . 8
             a.  Hostile, uncivil, and vulgar conduct. . . . 9
             b.  Impeding, delaying, and frustrating
                 fair examination. . . . . . . . . . . . 12
             c.  Failure to answer and intentionally
                 evasive answers.. . . . . . . . . . . . 16
         2.  HTFC's defenses of Wider's conduct.. . . . . 18
             a.  Relevance.. . . . . . . . . . . . . . . 18
             b.  Confidentiality.. . . . . . . . . . . . 20
             c.  Provocation.. . . . . . . . . . . . . . 21
             d.  Mental condition. . . . . . . . . . . . 22
         3.  Motion to compel and for sanctions.. . . . . 25
             a.  Violation of Rule 37(a)(3)(B)(i). . . . . 25
             b.  Violation of Rule 30(d)(2). . . . . . . 27

IV.  RULE TO SHOW CAUSE AS TO SANCTIONS AGAINST ZICCARDI. . . 28
     A.  Legal Standard. . . . . . . . . . . . . . . . . 29

B.   Discussion. . . . . . . . . . . . . . . . . . . . . 30
    1.   Summary of Ziccardi's conduct. . . . . . . . . 30
    2.   Ziccardi's defenses of his conduct.. . . . . . 31
        a.   Adequacy of intervention. . . . . . . . . 31
        b.   Good faith. . . . . . . . . . . . . . . . 34
        c.   Confidentiality.. . . . . . . . . . . . . 36
    3.   Rule to show cause as to sanctions.. . . . . . 37
        a.   Violation of Rule 37(a)(3)(B)(i). . . . . 37
        b.   Violation of Rule 30(d)(2). . . . . . . . 40

V.   CONCLUSION.. . . . . . . . . . . . . . . . . . . . . 41

I.   INTRODUCTION

The issue of how to rein in incivility by counsel in depositions has been the subject of considerable interest in the legal profession for some time.  Less discussed, perhaps because it is less frequent, but nevertheless just as pernicious, is what to do about uncivil conduct by a witness at a deposition.  An important corollary to the issue is what is the duty of counsel who is confronted by uncivil conduct by his own witness.

The spectacular failure of the deposition process in this case occurred during two deposition sessions in the course of a commercial dispute.  The deponent, Aaron Wider, is the owner and chief executive officer of Defendant HTFC Corp.

Before the Court are a motion to compel and for sanctions filed by Plaintiff GMAC Bank and a rule to show cause issued by the Court upon counsel for HTFC and Wider, Joseph Ziccardi, Esq., why sanctions should not be imposed upon counsel. A hearing was held on December 20, 2007, and the parties submitted supplemental briefing thereafter.  For the reasons that follow, the motion to compel will be granted, and Wider and Ziccardi will be sanctioned.

II.  BACKGROUND

Plaintiff GMAC Bank administers residential mortgage loans, and Defendant HTFC Corp. takes loan applications and sells

3

residential mortgage loans to lenders, such as GMAC.  GMAC and HTFC entered into a contract for the sale of certain loans.  GMAC claims that HTFC breached the contract by selling it certain loans that were improperly underwritten and not investment quality, and refusing to repurchase them, as required by the contract.  HTFC, in turn, asserts a counterclaim for tortious interference with contract based on GMAC's allegedly improper administration of certain loans to HTFC's clients.

On September 26 and November 8, 2007, GMAC sought to take the deposition of Aaron Wider, owner and chief executive officer of HTFC.  According to GMAC, due to Wider's abusive conduct toward counsel, obstruction and delay of the deposition proceedings, and failure to answer and evasive responses to questions propounded at the deposition, GMAC was unable to complete the deposition.  GMAC brings the instant motion to compel Wider's deposition and for sanctions.

III. MOTION TO COMPEL AND FOR SANCTIONS AGAINST WIDER

A.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 30 governs depositions by oral examination.[1]  Rule 30 sets forth a detailed protocol

---

[1]    The Federal Rules of Civil Procedure were amended, effective December 1, 2007.  <u>See</u> United States Courts: Federal Rulemaking, http://www.uscourts.gov/rules/index2.html (last accessed Feb. 28, 2008).  The misconduct at issue here occurred before the effective date of the amended rules.  As relevant

4

governing the conduct of parties, counsel, and deponents at depositions.  The rule provides that "examination and cross-examination of a deponent proceed as they would at trial under the Federal Rules of Evidence."  Fed. R. Civ. P. 30(c)(1).  The rule permits objections by counsel: "An objection, at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection."  Fed. R. Civ. P. 30(c)(2).

If "a deponent fails to answer a question asked under Rule 30," or provides an answer that is "evasive or incomplete," then a motion to compel the deposition testimony may be filed.  Fed. R. Civ. P. 37(a)(3)(B)(i), (a)(4).  "If the motion is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).

If a person's conduct is so egregious that it "impedes, delays, or frustrates the fair examination of the deponent,"[2] the

---

here, however, the amendment to the rules is limited to the restyling and renumbering of certain rules.  Therefore, the Court will cite to the amended rules.

[2]    Although a deponent's conduct in frustrating a deposition can be the functional equivalent of "failure to appear" at a deposition, courts have been reluctant to impose sanctions on that basis.  See Estrada v. Rowland, 69 F.3d 405, 406 (9th Cir. 1995) ("Estrada attended his deposition but refused

Court may impose an additional "appropriate sanction" on that person,[3] "including the reasonable expenses and attorney's fees incurred by any party."[4]  Fed. R. Civ. P. 30(d)(2).

    B.   <u>Discussion</u>

       More than 98% of all civil cases filed in the federal courts result in disposition by way of settlement or pretrial

---

to testify.  This is not a 'failure to appear' for the purposes of Rule 37(d)."); <u>accord</u> <u>R.W. Int'l Corp. v. Welch Foods, Inc.</u>, 937 F.2d 11, 15 n.2 (1st Cir. 1991); <u>SEC v. Research Automation Corp.</u>, 521 F.2d 585, 589 (2d Cir. 1975); <u>Stevens v. Greyhound Lines, Inc.</u>, 710 F.2d 1224, 1228 (7th Cir. 1983); <u>Aziz v. Wright</u>, 34 F.3d 587, 589 (8th Cir. 1994).

[3]    A "person" includes "'the deponent, any party, or any other person involved in the deposition.'"  <u>In re BWP Gas, LLC</u>, 2006 WL 2883012, at *1 (Bankr. E.D. Pa. June 13, 2006) (quoting Fed. R. Civ. P. 30 advisory committee's notes).

[4]    The text of Rule 30(d)(2) does not define "appropriate sanction" or "reasonable expenses and attorney's fees."  Courts have used their discretion to fashion a variety of remedies.  <u>See, e.g.</u>, <u>Biovail Labs., Inc. v. Anchen Pharms., Inc.</u>, 233 F.R.D. 648, 654 (C.D. Cal. 2006) (requiring payment of costs and attorney's fees incurred "in preparing this discovery motion, as well as . . . costs incurred in the first deposition" and also "costs attendant to resetting Dr. Seth's deposition, including travel costs for defendant's counsel"); <u>Plump v. Kraft Foods N. Am., Inc.</u>, No. 02-7754, 2003 WL 23019166, at *1 (N.D. Ill. Dec. 23, 2003) (requiring plaintiff to "pay the costs and fees incurred by defendant . . . in preparing, filing and arguing [the] Motion for Sanctions . . . and in taking the second session of [plaintiff's] deposition"); <u>Morales v. Zondo, Inc.</u>, 204 F.R.D. 50, 57-58 (S.D.N.Y. 2001) (requiring payment of "the transcript cost of [the] deposition," "[counsel]'s normal hourly rate multiplied by the number of hours during which he questioned [the deponent]," and "$1,500 to the Clerk of the Court.").

adjudication.[5]  Very often, these results turn on evidence

obtained during depositions.  Thus, depositions play an extremely

important role in the American system of justice.

Although the Federal Rules of Civil Procedure inform

the procedures to be followed and the duties and rights of

parties, witnesses, and counsel during and in connection with

depositions, the rules are largely self-executing.  Depositions

usually occur at a lawyer's office, outside the view of the

public and without judicial supervision.  Although, in

appearance, more informal than a court proceeding, they are an

integral part of the Court's procedures and the staple of modern

litigation.  For the process to succeed, it is essential that the

parties, attorneys, and witnesses participating in depositions

conduct themselves with civility and decency.

Because few depositions warrant sanctions more than

this one, Wider's conduct merits an extended discussion.[6]  The

_____

[5]    See Admin. Office of the U.S. Courts, Judicial Business
of the United States Courts: 2006, Table C-4A (stating that only
1.3% of all civil cases in U.S. district courts reached trial in
2006), http://www.uscourts.gov/judbus2006/appendices/c4a.pdf.

[6]    HTFC, defense counsel, and Wider have received ample
notice and opportunities to be heard concerning the possible
imposition of sanctions.  Specific notice of the sanctions being
considered was first given at a telephone discovery conference on
December 7, 2007.  Notice was again provided in subsequent orders
of the Court (doc. nos. 40, 41).  On December 21, 2007, an in-
person hearing on the motion to compel and for sanctions and the
rule to show cause was held, with Wider in attendance, where both
parties were invited to offer evidence and present oral argument.
At the hearing, the Court again put HTFC, defense counsel, and

Court has reviewed in detail the transcript and video recordings of the two-day deposition of Wider,[7] and summarizes its findings below.[8]

### 1.   Summary of Wider's conduct

Wider's assault on the deposition proceedings involved three types of inappropriate behavior: 1) engaging in hostile, uncivil, and vulgar conduct; 2) impeding, delaying, and frustrating fair examination; and 3) failing to answer and providing intentionally evasive answers to deposition questions. Multiple examples of each are provided below.

---

Wider on notice of the specific sanctions being considered. Thereafter, the parties were afforded the opportunity to submit supplemental briefing. See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 278 F.3d 175, 191 (3d Cir. 2002) (holding that due process "will usually require notice of the precise sanctioning tool that the court intends to employ").

[7]   Copies of the transcript and the video recording will be filed of record.

[8]   This opinion quotes many of Wider's uncensored remarks. While the use of profanity in the opinion is distasteful, it is necessary in order to capture the nature of the offensive conduct displayed by the deponent. See, e.g., Saldana v. Kmart Corp., 260 F.3d 228, 235-38 (3d Cir. 2001) (repeatedly quoting, without censoring, the word "fuck" where the severity of such language was relevant to motion for sanctions); McColm v. S.F. Hous. Auth., No. 02-5810, 2006 WL 3591208, at *1 (N.D. Cal. Dec. 11, 2006); Lynn v. Roberts, No. 03-3464, 2005 WL 3087841, at *6 & n.36 (D. Kan. Nov. 1, 2005).

a.   <u>Hostile, uncivil, and vulgar conduct</u>

Throughout his deposition, Wider sought to intimidate opposing counsel by maintaining a persistently hostile demeanor, employing uncivil insults, and using profuse vulgarity.

Q.   [T]his is your loan file, what do Mr. and Mrs. Fitzgerald do for a living?
A.   I don't know.  Open it up and find it.
Q.   Look at your loan file and tell me.
A.   Open it up and find it.  I'm not your fucking bitch.
Q.   Take a look at your loan application.
A.   Do it yourself.  Do it yourself.  You want to do this in front of a judge.  Would you prefer to [do] this in front of a judge?  Then, shut the fuck up.
Q.   Sir, take a look--
A.   I'm taking a break.  Fuck him.  You open up the document.  You want me to look at something, you get the document out.  Earn your fucking money asshole.  Isn't the law wonderful.  Better get used to it.  You'll retire when I'm done.

Wider Dep., Nov. 8, 2007, at 418:25-419:17.

Q.   And you have a hard time comprehending.  We're going to adjourn this deposition if this happens again because you are offending every single person.
A.   Don't speak for anybody in here except yourself fuck face.
Q.   I'm speaking for myself and I'm speaking for the Court Reporter.
A.   If she had a problem with me she would say something.  She knows it's [not] directed toward her.  It's directed to you because you're a piece of shit and a piece of garbage and I'm the only person in your life that is fucking up your world and I enjoy it.  I enjoy it and when you sit there and say I'm perpetrating a fraud I'm just better at the law than you are and you can't get in the fucking door and it's pissing you off.  Keep trying.

<u>Id.</u> at 433:19-434:11.

9

```
Q.   Have you spoken to Mr. Petinton about the subpoena
     he received for documents?
A.   He mentioned [it] to me.  He laughed at you.
Q.   What did he say?
A.   He thought you were a joke.
Q.   What else did he say?
A.   That you're a joke.
Q.   Did he say he had documents responsive to the
     subpoena?
A.   He had no documents.  He doesn't discuss things
     with me.  He just said you're a joke.
Q.   That's what he said?
A.   Yes.
Q.   So he shares your opinion on these things as well?
A.   Yes, you're a joke.
```

Id. at 437:24-438:15.

```
Q.   Do you know--
A.   No, I don't know.  Be specific.
MR. ZICCARDI: Let him finish the question.
Q.   Sir, if you can't be a little more civil--
A.   I am very civil.
Q.   --in how you respond to my questions--
A.   I am very civil.
Q.   What we can do is we can have this deposition in
     front of a judge.
A.   We can do that.
Q.   And the judge can--
A.   Let's do that.
Q.   No, no.  We're not going to--
A.   Let's do that; this way he can rip your ass out.
Q.   We're not going to do that, sir, okay.
A.   Then don't fuckin' threaten me, asshole.
Q.   Well, sir, I would appreciate it if you would
     control your language in light of the people that
     are present in the room and I would appreciate it
     if you would be a little more courteous, okay.
A.   I'm very courteous.
Q.   Okay.  Now--
A.   Let's go in front of a judge and shut up.
Q.   Sir--
A.   Shut your mouth.
```

Wider Dep., Sept. 26, 2007, 28:7-29:15.

The above are only a few examples of Wider's hostile,

10

uncivil, and vulgar conduct, which persisted throughout the nearly 12 hours of deposition testimony.  In fact, Wider used the word "fuck" and variants thereof no less than 73 times.  To put this in perspective--in this commercial case, where GMAC's claim is for breach of contract and HTFC's counterclaim is for tortious interference with contract--the word "contract" and variants thereof were used only 14 times.  Such profuse vulgarity had no constructive purpose.  The Court is left with the impression that such abusive language was chosen solely to intimidate and demean opposing counsel.[9]

This impression is confirmed by Wider's repeated references to himself as "the professor" and a "doctor of law," and repeated expressions of his belief that counsel for GMAC is a "joke" and a "fucking idiot."  See Wider Dep., Nov. 8, 2007, 437:24-438:15; Wider Dep., Sept. 26, 2007, at 65:15-66:7.

---

[9]     In Saldana, the Third Circuit reversed the district court's order imposing sanctions on an attorney pursuant to its inherent power for "a handful of uses" of the word "fuck."  260 F.3d at 238.  Saldana is distinguishable from this case in several respects.  First, the abusive language in Saldana did not occur in the presence of the Court or in an ancillary proceeding such as a deposition, but rather during telephone conversations between attorneys.  Second, far from a "handful" of vulgar words, Wider filled numerous pages of the deposition transcript with vulgarity and insult.  Finally, the Court does not employ its inherent powers in this case, as the Federal Rules of Civil Procedure provide the authority to impose sanctions.  See Prudential, 278 F.3d at 189 ("[G]enerally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." (quotation omitted)).

Additionally, although GMAC's counsel consistently and respectfully addressed the deponent as "Mr. Wider," the deponent repeatedly and patronizingly addressed GMAC's counsel by his first name.  See, e.g., Wider Dep., Sept. 26, 2007, at 366:8-20.

                   b.    Impeding, delaying, and
                        frustrating fair examination

        Equally serious is Wider's willful exploitation of the discovery process.  Wider impeded the deposition by improperly interposing his own objections, delayed the proceedings by providing unnecessarily protracted answers and repeatedly interrupting counsel for GMAC's questioning, and proudly expressed his intent to frustrate his examination.

> Q.  Are you done?
> A.  No, I'm not.  I'm going to keep going.  I'll have
>      you flying in and out of New York City every
>      single month and this will go on for years.  And,
>      by the way, along the way GMAC will be bankrupt
>      along the way and I will laugh at you.

Wider Dep., Nov. 8, 2007, at 434:12-17.

> Q.  Well, do you know the purpose for these transactions?
> A.  Why the fuck would I know that?
> Q.  I'm just asking you whether you know.
> A.  Why the fuck would I know that?
> Q.  I'm asking whether or not you know that.
> A.  It's got nothing to do with the transaction.  Don't ask
>      stupid questions.  Ask smart questions.
> Q.  So if Mr. Petinton were to say that he knew the purpose
>      of these transactions that you knew--
> A.  It doesn't make a difference.
> Q.  --he'd be lying?
> A.  I don't give a flying fuck what he's lying about.  It
>      has no bearing.  Stick to the here and now; you'll get
>      out of here quicker because I'll take months.  You'll

```
               be back and forth.  I'll make your life miserable.
               Trust me.  You'll be drinking breakfast, lunch, and
               dinner every day.  Start asking some real questions.
          Q.   All right.  So this--
          A.   You want to know what color I wipe my ass with?  I
               swear to you, my four-year-old knows more than you.
```

Wider Dep., Sept. 26, 2007, at 251:6-252:11.

```
          Q.   My question is--
          A.   My question is go in front of a judge and stop
               threatening me.
          Q.   I'm not threatening you, sir.
          A.   Then shut up.
          Q.   What I'm telling you is that if you can't--
          A.   I can.  If you don't like my response--
          Q.   No, no, sir.
          A.   --then note that I'm refusing to answer it.
          Q.   Sir.
          A.   Deal with it because this is how it's going to be
               like clock work.
          Q.   All right, sir.
          A.   And I'll tell you what uncivil and what
               uncourteous is.  Telling you to go fuck yourself
               is uncivil.  If you ask a question, I'm going to
               give you a response.  If you pry into my father's
               death, I'm going to give you a response.  If you
               fuck with my mental illness, I'm going to give you
               a response.  And if you threaten to put me in
               front of a judge, let's do it.  I got all the time
               in the day, all the time in the day, and the judge
               will restrain you.
          Q.   Are you done, sir?
          A.   No, I'm not.  We're just beginning.
```

Id. at 28:18-30:25.

          Wider accomplished his dilatory purpose in part by

abruptly storming out of the deposition on several occasions and

repeatedly forcing counsel to take breaks.

```
          Q.   Well, I will represent to you he did and that I
               served Mr. Finger with a subpoena for all of the
               records of the closings on those loans, including
               the records of payments and disbursements.
          A.   And you're shooting blanks.
```

```
Q.   Are you very pleased with yourself, sir?
A.   Yes, I am.
Q.   Because you're trying to perpetrate a fraud and
     hide it?
A.   Go fuck yourself, Bob.  Now, you're going to have
     to wait.
Q.   Sir, if you keep walking out--
A.   Shut the fuck up.
Q.   Here we go again.
A.   I have a business to run.
Q.   You don't have a business to run.  You have a
     deposition.
A.   Shut the fuck up.  Don't tell me what to do.  You
     sit there.  You're on the payroll.  You can sit
     there and juice your client; you're not juicing
     me.  [Wider leaves the room.]
```

Wider Dep., Nov. 8, 2007, 432:6-433:1.

```
Q.   You need to tell me--
A.   Your representation of your company willfully went
     out and tried to fuck up my life.  You don't need
     to know anything about this company.
MR. ZICCARDI: Let's take a break.
MR. BODZIN [counsel for GMAC]: We can take a break but
     we're not going to do this over and over again.
     If Mr. Wider simply does not want to answer
     questions or answers questions in this manner
     we're not going to have a conference every time it
     happens.  Hopefully, you will be able to speak
     with him and persuade him that's not an
     appropriate response to my questions.
THE WITNESS: We're having a conference tomorrow, Bob.
     Why don't you get a motion from the Judge because
     he's going to give you an ass licking.
```

Id. at 362:15-363:8.

In addition to exploiting the deposition process with
the apparent purpose of increasing the financial burden on GMAC,
Wider repeatedly violated the procedural rules governing the
deposition.  Instead of allowing his counsel to make objections,
Wider regularly interposed his own objections.  Further, even in

14

the absence of any objection from counsel or instruction not to
answer, Wider improperly refused to answer questions.

> Q.  Going back to the deed between yourself and the
>     Sacaro Trust on April 29, 2005, what was the
>     purpose of that transaction?
> A.  That's confidential.  You know the laws of Trusts.
> Q.  It's not confidential.
> A.  Yes, it is.
> Q.  What was the purpose of that transaction?
> A.  None of your business.  That's the law.
> Q.  What is the Sacaro Trust?
> A.  None of your business.  Not even a Judge could get
>     me to enforce that.

Id. at 405:19-406:6.

> Q.  What was the purpose--
> A.  None of your--
> Q.  --for buying a property for $525,000 and on the same
>     day, conveying it to a trust, and then conveying it
>     back to you for $1,150,000?
> A.  None of your business.
> Q.  No, [it] is my business.
> A.  It's none of you[r] business.  This is the law.  Look
>     it up.
> Q.  My question is what is your purpose?
> A.  I'm answering your question, okay.  I'm a doctor of
>     law.  I'm not here to teach you.  You come to my
>     university, you pay for it.  It's on a need-to-know
>     basis.  You don't need to know.

Wider Dep., Sept. 26, 2007, at 65:15-66:7.

The video recording of the deposition reveals further
indicia of Wider's intent to exploit and protract his deposition.
At multiple points during the deposition, Wider would follow his
inappropriate, obstructive, or dilatory remarks with a gleeful
smirk directed at his counsel, at the transcriptionist, and even
directly at the camera.  See, e.g., Wider Dep. Video, Nov. 11,
2007, at 10:38:00-:30; Wider Dep. Video, Sept. 26, 2007, at

15

10:45:00-:30, 15:27:00-:30.  In fact, after a particularly odious instance of obstruction, Wider would even pat himself on the back, flaunting his exploitation of the deposition process, and asking, "Isn't the law wonderful?"  See, e.g., Wider Dep., Nov. 8, 2007, at 418:25-419:17.

c.    Failure to answer and
      intentionally evasive answers

Wider often refused to answer questions, and, when he did answer questions, provided intentionally uncooperative and long-winded answers to straightforward questions.

```
Q.    My question is where are you currently employed?
A.    I'm not.  I just told [you] I work for free.
Q.    Okay.  You're not employed by HTFC Corporation?
A.    No, I own HTFC Corporation.  Be specific.
Q.    Okay.  And what do the initials HTFC mean?
A.    Hit That Fuckin' Clown.  That's what it means.
      It's an acronym.
```

Wider Dep., Sept. 26, 2007, at 16:14-25.

```
Q.    Did you ever reside at 1004 Broadway?
A.    Can't recall.
Q.    You don't know where you lived?
A.    No, I don't.
Q.    You don't know where you lived?
A.    According to you, I've got psychiatric issues.  So
      I can't recall.  You remember that.
Q.    Sir, this is November of 2007.
A.    That's right.
Q.    You don't recall where you lived between 2005 and
      2006?
A.    Well, according to you I've got psychiatric issues
      since the last deposition.  No, I--
Q.    So you don't recall where you lived.
```

Wider Dep., Nov. 8, 2007, at 407:20-408:10.

Q.    Is it just a coincidence Mr. Petinton was involved
      as the Trustee in connection with both of those
      Trusts?
A.    It's not a coincidence that I'm a genius at what I
      do.  I obey the law and live the law.  You
      practice the law.  Sir, I'm not going to be
      interrupted while I am speaking.  I live the law.
      You serve the law.  You practice the law.  I abide
      by the law and enforce the law to the fullest
      extent the law allows.  The only difference
      between you and I is I have a pair of balls and
      you don't.  The only difference between the
      average person [and me] is I have a pair of balls
      and they don't.  You think it's funny.  I'm not
      the one chasing $15 million ass wipe.

Id. at 428:3-18.

Q.    Sir, during the time period of January 2006
      through March 2007, can you identify any specific
      loans that you wanted to sell into the marketplace
      that you were unable to sell?
A.    Hundreds.  [I] can identify hundreds.
Q.    Identify those loans for me.
A.    I don't carry them in my head, Bob.
Q.    Where is the information that would describe these
      loans?
A.    Can you spell your name backwards, Bob?  That's
      what you're asking.  Everything is done
      electronically.  Everything's in the files.  Can
      you spell your name backwards, Bob?  Tell me.

Wider Dep., Sept. 26, 2007, at 366:8-20.

Q.    Do you know who--and, again, you'll see on the
      fourth page that there is a direction that the
      Deed be returned by mail to GCF Development, do
      you know why?
A.    Yes, we're testing Carlton Cheats's program.
Q.    I'm sorry?
A.    I am testing Carlton Cheats' program on TV.
Q.    Who is Carlton Cheats program?
A.    You don't watch Carlton Cheats on TV?  Buy a
      house.  Rehab a house.  I suggest you watch TV.  I
      answered your question.
Q.    Why is the direction this deed be returned to GCF
      Development testing Carlton Cheats's program?
A.    Go watch the program and find out.  I'm not here

17

```
                to educate you, Bob.
    Q.    You don't have an answer to that either?
    A.    I just answered you.  You don't like the answer.
          You might not be able to manipulate me to get an
          answer but when I tell [you] that's my answer you
          fucking accept it or don't.
```

Wider Dep., Nov. 8, 2007, at 413:14-414:12.

```
    Q.    Sir, were you involved in flipping that property?
    A.    You tell me.
    Q.    Sir, I'm going to ask the questions.  You're going
          to answer the question.
    A.    I just responded with a question.
    Q.    Were you involved in flipping the property at 207
          North Rutherford?
    A.    You tell me.  And you provide that evidence to the
          court.
    Q.    It doesn't work that way, sir.
    A.    Yes, it does.  That's my answer.  Listen, we can
          go around in circles and you'll end up with the
          same answer.  You tell me.  You're that good.
          You're hired by GMAC.
    Q.    Sir, my question is, and I expect an answer.
    A.    I can't recall.
    Q.    Were you involved in flipping 207 North
          Rutherford?
    A.    I can't recall.  I'm involved in flipping you.
```

Wider Dep., Sept. 26, 2007, 253:12-254:11.


                2.    HTFC's defenses of Wider's conduct

        Although conceding that Wider's conduct at his

deposition was crude and vulgar, HTFC advances several arguments

in an attempt to justify Wider's conduct.


            a.    Relevance

        HTFC argues that Wider's refusal to respond to

questions during his deposition was justified because many of

GMAC's questions were irrelevant.  HTFC is incorrect.  Federal Rule of Civil Procedure 30(c)(2) provides that a deponent must answer all deposition questions--notwithstanding counsel's objections--unless counsel expressly instructs the deponent not to answer or moves to suspend the deposition.  In fact, Wider was expressly advised of this rule by GMAC's counsel, but continued to be recalcitrant and nonresponsive.  See Wider Dep., Nov. 8, 2007, at 12:20 ("If your counsel has objections to my questions, your counsel can raise objections.  In the absence of an objection or instruction from your counsel, you have to answer my questions; do you understand that?").

If counsel for a deponent believes that a question is improper, the Federal Rules give him three choices: 1) he may object to the question and allow the deposition to proceed while preserving the objection, see Fed. R. Civ. P. 30(c)(2); 2) he may instruct the witness not to answer, generally to preserve a privilege or enforce a court-ordered limitation,[10] see id.; or 3)

---

[10]    The rule speaks in absolute terms, permitting counsel to instruct the witness not to answer "only" to "preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."  Fed. R. Civ. P. 30(c)(2). As a practical matter, some courts have interpreted the rule to provide greater flexibility.  Compare Hall v. Clifton Precision, 150 F.R.D. 525, 531 (E.D. Pa. 1993) ("Counsel shall not direct or request a witness not answer a question, unless that counsel has objected to the question on the ground that the answer is protected by a privilege or a limitation on evidence directed by the court."), with Prudential-LMI Commercial Ins. Co. v. Windmere Corp., No. 94-0197, 1995 WL 37635, at *2 (E.D. Pa. Jan. 23, 1995) (certain courts "take the view that a deponent need not answer if

he may suspend the proceedings and bring a motion to terminate or limit the deposition if it is being conducted in bad faith or in order to unreasonably annoy, embarrass, or oppress the deponent or a party, <u>see</u> Fed. R. Civ. P. 30(d)(3)(A).

The rules do not permit a deponent to interpose objections himself.  They do not permit evasive or uncooperative answers merely because a deponent is dissatisfied with a question.  And they certainly do not permit intentionally prolonging a deposition to further burden the litigation.

### b.   <u>Confidentiality</u>

HTFC similarly argues that Wider refused to respond to certain questions because they sought confidential information. Defense counsel, however, only objected on confidentiality grounds on a few occasions; on most occasions, Wider directly and improperly made an objection himself, and when pressed, simply refused to answer the question.  Moreover, HTFC did not seek a protective order prior to Wider's deposition.  In fact, HTFC did not file a motion for protective order until nearly a month <u>after</u> Wider's deposition was completed.[11]

---

the objection is that the question is irrelevant, argumentative, or misleading").  <u>See generally</u> <u>Acri v. Golden Triangle Mgmt. Acceptance Co.</u>, No. 93-12188, 142 Pitt. L.J. 225 (Com. Pl. 1994) (comparing the two approaches).

[11]   Rule 26(c) provides, in pertinent part:

c.   Provocation

HTFC next argues that Wider's abusive and obstructive conduct is justified because he was merely reacting to deposing counsel's provocative and accusatory questions.  This argument is simply astonishing.  As evidenced in the video recording of the deposition, counsel for GMAC comported himself with courtesy, respect, and professionalism; this was no easy feat, considering Wider's unrelenting insults, vulgarity, and mockery, most of which were a direct assault on counsel for GMAC.

Far from provocative, counsel for GMAC asked relevant questions of the type seen in the ordinary course of a deposition in a commercial case.  It was Wider who gave the provocative responses.  For instance, when deposing counsel asked Wider to look at his loan file, Wider responded, "Open it up and find it.

---

A party or any person from whom discovery is sought may move for a protective order . . . on matters relating to a deposition, in the court for the district where the deposition will be taken. . . .  The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . [an order] requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.

Fed. R. Civ. P. 26(c)(1)(G).  Therefore, the proper course of conduct for HTFC would have been to, before the deposition began, obtain a protective order from the Court.  See id.  Failing that, HTFC could have adjourned the deposition and sought a protective order from the Court.  See Fed. R. Civ. P. 30(d)(3)(A).  The rule does not permit HTFC to proceed with the doomed deposition, knowing that Wider will refuse to answer questions based on the purported confidentiality of the information sought.

I'm not your fucking bitch."  When the request was renewed, Wider responded by telling counsel to "shut the fuck up."  Wider Dep., Nov. 8, 2007, at 418:25-419:17.  Subsequently, when counsel for GMAC represented that he had served a third party with a subpoena for certain records, Wider responded: "And you're shooting blanks."  Id. at 432:6-433:1.  Finally, Wider referred to counsel for GMAC as a "clown" throughout the deposition, and when asked what the initials HTFC mean, Wider responded: "Hit That Fuckin' Clown."  Wider Dep., Sept. 26, 2007, at 16:14-25.

Counsel for GMAC exercised great restraint in the face of Wider's persistent attempts to incite him to anger.  In short, deposing counsel could not have been less provocative.  Thus, the purported "provocation" of Wider cannot justify his abusive, obstructive, and evasive conduct.

d.  Mental condition

Finally, HTFC argues that Wider's conduct at his deposition is explained by a mental condition, which should be considered as a mitigating factor in imposing any sanctions.

At the hearing on the instant motion, both Wider and his treating physician, Dr. Oscar Calderon, were present.  Although the Court afforded Wider the opportunity to present

testimony under oath, no witnesses were called.[12]  After the hearing, HTFC requested that it be able to submit an affidavit from Dr. Calderon under seal.  The Court granted the request, but specifically advised HTFC in the order of December 21, 2007, that it would not consider the affidavit <u>ex parte</u>, but rather that "Plaintiff is entitled to discovery of the subject matter of the medical records in connection with the pending motion to compel and for sanctions."  Disregarding the Court's order, HTFC filed the affidavit under seal but never served a copy upon opposing counsel.  Accordingly, the Court will not consider the affidavit of Dr. Calderon.

Moreover, Wider's argument that his alleged mental condition mitigates his sanctionable conduct has no merit. Within the first few minutes of the deposition, counsel for GMAC inquired as to Wider's mental condition, and Wider replied that he suffers from an "anxiety disorder."  Wider also indicated, however, that he had taken his medication the day of the deposition, as he has every day for ten years, and is accustomed to the medication.  Before questioning commenced, the following exchange took place:

Q.   Well, are you feeling any adverse [e]ffects [from

---

[12]   During the hearing, defense counsel purported to offer an apology to the Court and opposing counsel on Wider's behalf. Tellingly, although he was present at the hearing and was afforded the opportunity to address the Court, Wider himself remained silent throughout the proceedings.

```
                 your] medication right now?
        A.       Not right now, no.
        Q.       All right.  If at any time during the deposition
                 you are feeling adverse [e]ffects of the
                 medication, will you let me know that?
        A.       Yes.
```

Wider Dep., Sept. 26, 2007, 9:6-9:16.  Therefore, Wider and his

counsel were well aware of their ability to stop the deposition

whenever Wider felt any adverse effects from his medication.

Nonetheless, during the nearly 12 hours of deposition testimony--

which was pervaded by Wider's abusive, obstructive, and evasive

conduct--Wider reported an adverse effect from his medication on

only two occasions.[13]

        On other occasions, Wider used his mental illness as a

dubious defense to avoid answering questions.  For example, when

asked where he lived during 2005 and 2006, Wider responded:

"According to you, I've got psychiatric issues.  So I can't

recall.  You remember that."  Wider Dep., Nov. 8, 2007, at

407:20-408:10.  Wider also gave deposing counsel reason to doubt

the sincerity of his claim of mental illness, stating at one

point that he was not receiving psychiatric treatment and "just

ha[s] anxiety"; in fact, when asked whether he had ever been

---

        [13]   On both occasions, counsel for GMAC immediately agreed
to adjourn the deposition until Wider had recovered.  See Wider
Dep., Sept. 26, 2007, at 13:2, 71:8.  On the first occasion,
Wider became angry and left the room, leading to a five-minute
recess.  On the second occasion, Wider reported blurred vision,
and counsel for GMAC agreed to adjourn until Wider regained his
vision, and a ten-minute recess was taken.

diagnosed as being paranoid or schizophrenic, Wider replied, "Not at all.  I'm a genius."  Wider Dep., Sept. 26, 2007, at 91:8-16. Whatever truth there may be to Wider's claim of anxiety and mental instability, it does not justify or mitigate his abusive, obstructive, and evasive behavior.

### 3.   Motion to compel and for sanctions

In light of the overwhelming evidence that Wider's conduct at his deposition violated Federal Rules of Civil Procedure 37(a)(3)(B)(i) and 30(d)(2), the motion to compel will be granted and sanctions will be imposed upon Wider.

### a.   Violation of Rule 37(a)(3)(B)(i)

As explained above, a party seeking discovery may "move for an order compelling an answer" if "a deponent fails to answer a question" asked during a deposition.  Fed. R. Civ. P. 37(a)(3)(B)(i); see also Fed. R. Civ. P. 37(a)(4) (providing that "an evasive or incomplete . . . answer . . . must be treated as a failure to . . . answer").  The record reveals that Wider continually failed to answer questions propounded at his deposition.  When Wider did answer questions, his answers were evasive and non-responsive.  This is a clear violation of Rule 37(a)(3)(B)(i), and thus GMAC's motion to compel will be granted. Accordingly, Wider's deposition will be taken in Philadelphia,

PA, under the supervision of a magistrate judge.

Because the motion to compel will be granted, the Court must determine whether sanctions are appropriate under Rule 37(a)(5)(A) ("If the motion [to compel] is granted . . . the court must . . . require the . . . deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."). Sanctions under Rule 37(a)(5)(A) have a compensatory purpose. See Hutto v. Finney, 437 U.S. 678, 690 n.14 (1978) ("The award . . . makes the prevailing party whole for expenses caused by his opponent's obstinacy."). Sanctions are not appropriate, however, if "the movant filed the motion before attempting in good faith to obtain the . . . discovery without court action," "the opposing party's nondisclosure . . . was substantially justified," or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

Here, Wider's failure to answer questions propounded at his deposition was not justified. Moreover, GMAC attempted in good faith over the course of nearly 12 hours to obtain Wider's deposition testimony, with very little success. Therefore, because no circumstances exist here that would make an award of expenses unjust, the Court will require Wider to pay the reasonable expenses incurred by GMAC in preparing and arguing the instant motion, including attorney's fees, pursuant to Rule

26

37(a)(5)(A).

On January 3, 2008, GMAC filed a fee petition indicating that it incurred $13,026.00 in fees and expenses in connection with the motion to compel.  HTFC has not objected to the fee petition.  Therefore, as there is no objection, and the Court finds the amount to be reasonable, HTFC will be ordered to pay GMAC $13,026.00, pursuant to Rule 37(a)(5)(A).

b.   <u>Violation of Rule 30(d)(2)</u>

As discussed above, "[t]he court may impose an appropriate sanction--including the reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).  As with Rule 37(a)(5)(A), an award of costs and fees under Rule 30(d)(2) may be used to compensate the party aggrieved by the frustration of the deposition.  <u>See</u> <u>Plump</u>, 2003 WL 23019166, at *1 ("[C]osts and attorneys' fees awarded are those incurred <u>as a result</u> of the frustration of fair deposition examination.  Thus, time that may have been appropriately spent in order to represent the client might not necessarily qualify as time that can be reimbursed as a sanction." (emphasis added)).

Here, the record is replete with evidence that Wider willfully and in bad faith impeded, delayed, and frustrated his fair examination.  <u>See</u> <u>supra</u> Part III.B.1.b.  Although the

27

deposition lasted for nearly 12 hours, little of Wider's testimony is of any value due to his willful frustration of the deposition.  In light of this clear violation of Rule 30(d)(2), the Court will impose sanctions upon Wider.

The Court will order Wider to pay the reasonable expenses and attorney's fees incurred by GMAC in preparing for and conducting the portion of the deposition sessions on September 26 and November 8, 2007 that was frustrated by Wider's conduct.  On January 3, 2008, GMAC filed a fee petition indicating that it incurred $16,814.60 in attorney's fees and $3685.66 in costs in connection with Wider's deposition.  HTFC has not objected to the fee petition.  Upon a detailed review of the transcript and video recording of the deposition sessions, the Court finds that approximately 75% of the time spent deposing Wider was time wasted due to Wider's frustration of fair examination.  Therefore, the Court will impose upon Wider a sanction consisting of the costs incurred in connection with his deposition ($3685.66), plus 75% of the attorney's fees incurred in connection with the deposition ($12,610.95), or $16,296.61.

IV.  RULE TO SHOW CAUSE AS TO SANCTIONS AGAINST ZICCARDI

The Court turns now to the question of whether defense counsel Joseph Ziccardi's conduct at Wider's deposition warrants

sanctions under the Federal Rules of Civil Procedure.[14]

A.   <u>Legal Standard</u>

The Federal Rules specifically provide for sanctions if "a deponent['s] fail[ure] to answer a question" or "evasive or incomplete" answers at a deposition necessitate a motion to compel.  Fed. R. Civ. P. 37(a)(3)(B)(i), (a)(4), (a)(5)(A).  These sanctions can apply to attorneys: "If the motion is granted . . . the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or <u>attorney advising that conduct</u>, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).  Therefore, an attorney who improperly "advis[es]" a deponent to provide evasive or incomplete answers or to refuse to answer questions propounded at a deposition is

---

[14]     Ziccardi was not the only attorney representing Wider or HTFC during Wider's deposition.  Raymond Voulo, Esq., Wider's New York counsel, was also present at, but did not defend, the deposition.  The Court does not consider sanctions against Voulo because he is not an attorney of record in this case.  Daniel Strick, Esq., HTFC's local counsel and Ziccardi's sponsor for admission <u>pro hac vice</u>, is an attorney of record in this case. The parties agree, however, that Strick was not involved in Wider's deposition, and thus sanctions will not be considered against him either.  The Court will only consider sanctions against Ziccardi, who was counsel for Wider at the deposition and is lead counsel for HTFC in this case.  Ziccardi has received ample notice of the specific sanctions considered by the Court and opportunity to be heard.  <u>See</u> <u>supra</u> note 6.

subject to sanctions.  Sanctions must be imposed unless "circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(i)-(iii).

        In addition, an attorney may be sanctioned for engaging in conduct that "impedes, delays, or frustrates the fair examination of the deponent."  Fed. R. Civ. P. 30(d)(2) (empowering a court to impose an "appropriate sanction," including "reasonable expenses and attorney's fees incurred by any party"); see also In re BWP Gas, 2006 WL 2883012, at *1 (noting that Rule 30(d)(2) can apply to "any . . . person involved in the deposition"); Redwood v. Dobson, 476 F.3d 462, 469-70 (7th Cir. 2007) (applying Rule 30(d)(2) sanctions to an attorney for failing to adjourn a futile deposition and improperly instructing his client not to respond to questions).


    B.    Discussion

        1.    Summary of Ziccardi's conduct

        As evidenced by the portions of the record quoted at length above, throughout the deposition, notwithstanding the severe and repeated nature of Wider's misconduct, Ziccardi persistently failed to intercede and correct Wider's violations of the Federal Rules.  See supra Part III.B.1.  Instead, Ziccardi sat idly by as a mere spectator to Wider's abusive, obstructive, and evasive behavior; and when he did speak, he either

incorrectly directed the witness not to answer,[15] dared opposing counsel to file a motion to compel,[16] or even joined in Wider's offensive conduct.[17]

>    2.   Ziccardi's defenses of his conduct

>         a.   Adequacy of intervention

Ziccardi argues that he made sufficient efforts to intervene and curb his client's misconduct.  To that effect, the few attempts that Ziccardi did make to control his client were limited to mildly worded requests to Wider to answer a question or not interrupt counsel for GMAC.  See, e.g., Wider Dep., Sept. 26, 2007, at 26:23, 37:3, 69:8, 114:12, 158:12, 204:7, 231:4-232:8, 254:12-256:6.

Ziccardi avers that many of his efforts to correct his

---

[15]   See, e.g., Wider Dep., Nov. 8, 2007, at 363:17-365:9; Wider Dep., Sept. 26, 2007, at 74:15-76:24.

[16]   See Wider Dep., Nov. 8, 2007, at 366:15-367:3 (after Wider answered the question "Where is the information that would describe those loans?" with "Can you spell your name backwards, Bob?," Ziccardi defended the response: "Take whatever action you want to take.  I mean, he is trying to answer the questions and he is answering the questions and he will continue to answer the questions"); id. at 363:17-365:9 (challenging opposing counsel to "file whatever motion you want to file" after Wider improperly refused to answer a question).

[17]   See Wider Dep., Nov. 8, 2007, at 372:7-14 (Ziccardi chuckling at Wider's abusive behavior toward counsel for GMAC, which was followed by this response from counsel for GMAC: "You know, your snickering counsel is not appropriate either because all you're doing is encouraging the behavior of your client").

client's misconduct occurred off the record.  Even if this

assertion is to be believed, Wider's continuing misconduct

indicates that whatever efforts Ziccardi made were woefully

ineffectual.  In fact, Ziccardi's meek attempts to intercede and

his otherwise silent toleration of Wider's conduct only

emboldened Wider to further flout the procedural rules:

> MR. BODZIN: I'm going to ask the question again and
>      I'll ask it a different way so as to make sure
>      that I'm not characterizing this witness's
>      testimony.
> THE WITNESS: Get his [Ziccardi's] permission.
> MR. BODZIN: I don't need his permission.
> THE WITNESS: Yes you do.
> Q.   My question is in submitting loans originated by
>      HTFC for purchase by GMAC, was it HTFC's policy
>      that so long as there was an appraisal that
>      supported the value of the property, it was not up
>      to HTFC to report to GMAC flip activity?
> MR. ZICCARDI: Same objection.  Go ahead.
> A.   My attorney just told you to get fucked and so did
>      I.
> MR. ZICCARDI: No.
> THE WITNESS: Okay.  That's for the record.
> Q.   First of all, your attorney didn't tell me that.
>      You told me that and now you can answer the
>      question.
> A.   Go get fucked.
> Q.   You're not answering the question?
> A.   I did answer your question.
> Q.   No, that's not an answer to the question.
> A.   That's my answer to your question.
> Q.   Okay.
> A.   My attorney very nicely told you that he objects.
>      Fuck you.  And I'm telling you on behalf of my
>      attorney, fuck you.

Id. at 256:11-259:7.

It is true that any attorney can be blindsided by a

recalcitrant client who engages in unexpected sanctionable

conduct at a deposition.  An attorney faced with such a client
cannot, however, simply sit back, allow the deposition to
proceed, and then blame the client when the deposition process
breaks down.  See Redwood, 476 F.3d at 469-70 ("It is precisely
when animosity runs high that playing by the rules is vital. . .
.  Because depositions take place in law offices rather than
courtrooms, adherence to professional standards is vital, for the
judge has no direct means of control.").

      Moreover, Ziccardi was not blindsided by Wider.
Rather, he had ample notice of Wider's intent to frustrate the
deposition.  Wider's first outburst and unilateral interruption
of the deposition occurred a mere six minutes after the
deposition had begun.  See Wider Dep. Video, Sept. 26, 2007, at
9:21-22.  Wider's first use of profanity and hostile behavior
toward opposing counsel occurred only a few minutes later.  See
id. at 9:27:30-9:28:00.  Therefore, Ziccardi was on notice at an
early point during the deposition of his client's hostility
toward opposing counsel and efforts to frustrate the deposition.
Nonetheless, Ziccardi allowed the deposition to drag on for over
two days and nearly twelve hours of testimony, much of which was
an unmitigated waste of time and resources.

      Ziccardi never once suggested that the ill-fated
deposition be adjourned.  In fact, even though the deposition was
being taken over 100 miles away from counsel for GMAC's home

office, it was counsel for GMAC who suggested adjournment several times, see Wider Dep., Nov. 8, 2007, at 366:23, 433:20, and who eventually adjourned the deposition after enduring the last of many onslaughts from Wider:

> Q.   Yes or no, did he ask you if you had any
>      documents?
> A.   Shut the fuck up.  Don't raise your voice to me.
> MR. BODZIN: We're adjourning this deposition.
> THE WITNESS: Good.
> MR. BODZIN: We're adjourning this deposition.  We're
>      going back to the Judge.  We're going to let the
>      Judge decide if this was an appropriate way for
>      anybody to behave at a deposition.  I'm not going
>      to continue--
> THE WITNESS: You don't point your fucking fingers at
>      me.  You don't raise your fucking voice at me.
>      And I'm going to spit right back at you.
> MR. BODZIN: I'm not going to continue to be subject to
>      this harassment, this rudeness is absolutely
>      inappropriate conduct and I'm going to adjourn
>      this deposition right now.
> THE WITNESS: Good.

Id. at 439:4-24.

Based on the record, the Court rejects the argument that Ziccardi made adequate efforts to curb Wider's misconduct.

### b.   Good faith

Ziccardi argues that his actions at Wider's deposition were not taken in bad faith, but rather with the intent to "move the discovery process along by attempting to complete the deposition of Mr. Wider."  Deft.'s Memo. of Law in Resp. to Plf.'s Mot. to Compel and Rule to Show Cause 8-9.

However, the imposition of sanctions under Federal

Rules of Civil Procedure 30(d)(2) and 37(a)(5)(A) does not require a finding of bad faith.  See Sicurelli v. Jeneric/ Pentron, Inc., No. 03-4934, 2005 WL 3591701, at *8 (E.D.N.Y. Dec. 30, 2005) ("[F]or purposes of Rule [30(d)(2)], a clear showing of bad faith on the part of the attorney against whom sanctions are sought is not required.  Instead, the imposition of sanctions under Rule [30(d)(2)] requires only that the attorney's conduct frustrated the fair examination of the deponent."); Pucket v. Hot Springs Sch. Dist. No. 23-2, 239 F.R.D. 572, 588 (D.S.D. 2006) (same); Devaney v. Cont'l Am. Ins. Co., 989 F.2d 1154, 1162 (11th Cir. 1993) (rejecting "the notion of a bad faith requirement" under Rule 37(a)(5)(A) (citing Merritt v. Int'l Brotherhood of Boilermakers, 649 F.2d 1013, 1019 (5th Cir. 1981))).

Even if a finding of bad faith were required here, the record, viewed as a whole, inexorably leads to the conclusion that Ziccardi's conduct was undertaken in bad faith.  Given the length of the deposition and the severe, repeated, and pervasive nature of Wider's misconduct, it is clear that Ziccardi's failure to intervene was not merely negligent, but rather willful. Ziccardi's bad faith is further revealed by his challenges to opposing counsel to "file whatever motion you want to file" and his snickering at Wider's abusive conduct.[18]  Wider Dep., Nov. 8,

---

[18]    In re Minniti, 242 B.R. 843 (E.D. Pa. 2000), cited by Ziccardi, is consistent with a finding of bad faith here.  See id. at 850 (imposing sanctions and noting that "bad faith may be

2007, at 363:17-365:9, 372:7-14; see Prudential, 278 F.3d at 190
(affirming finding of bad faith because "[w]hen viewed
individually, each single instance of misbehavior by [counsel]
might not warrant the sanctions arrived at by the court," but
"considered as a whole, his transgressions evidence a pattern of
obfuscation and mean spiritedness").  Therefore, even if a
finding of bad faith were required, the record supports such a
finding in this case.

c.  Confidentiality

       Ziccardi further attempts to justify his conduct by
arguing that the questions propounded at the deposition by
counsel for GMAC sought confidential information and thus were
properly not answered by Wider.  However, Ziccardi did not
generally object to the questions on that basis at the
deposition,[19] and he did not seek an adjournment to obtain a
protective order, as permitted by Federal Rule of Civil Procedure
30(d)(3)(A).  See supra note 11.  In fact, HTFC did not move for

_____

inferred when the attorney's actions are so completely without
merit as to require the conclusion that they must have been
undertaken for some improper purpose" (quotation omitted)).

       [19]  On at least one occasion during the deposition,
Ziccardi demonstrated that he knew that he was authorized under
the Federal Rules to object to questions seeking confidential
information, see Wider Dep., Nov. 8, 2007, at 363:17-365:9 ("I'm
going to object . . . on the basis . . . [that] I think it seeks
confidential proprietary business information of HTFC which HTFC
is not going to disclose.").

a protective order until a month _after_ the deposition had concluded.  Having failed to timely object to the questions at the deposition and/or move for a protective order, Ziccardi cannot now justify his failure to control his client on the basis that he sought to protect the confidentiality of certain communications at the deposition.

    3.   <u>Rule to show cause as to sanctions</u>

Because he has failed to show cause why sanctions should not be imposed, the Court will impose sanctions upon Ziccardi.

    a.   <u>Violation of Rule 37(a)(3)(B)(i)</u>

As explained above, if a motion to compel is necessitated by a deponent's "evasive or incomplete" answers or "failure to answer" questions, the movant may seek sanctions against the "attorney advising that conduct."  Fed. R. Civ. P. 37(a)(3)(B)(i), (a)(4), (a)(5)(A).  It is beyond dispute that Wider provided evasive and incomplete answers and failed to answer questions propounded at his deposition.  <u>See</u> <u>supra</u> Part III.B.1.c.  The remaining question is whether Ziccardi "advis[ed]" Wider's misconduct.

It is true that, in most instances, Ziccardi did not actively counsel Wider on the record to provide evasive or

incomplete answers or to refuse to answer questions.  What is remarkable about Ziccardi's conduct is not his actions, but rather his failure to act.  Despite the pervasiveness of Wider's evasive and incomplete answers and his repeated failure to answer questions, Ziccardi failed to take remedial steps to curb his client's misconduct.

The nature of Wider's misconduct was so severe and pervasive, and his violations of the Federal Rules of Civil Procedure so frequent and blatant, that any reasonable attorney representing Wider would have intervened in an effort to curb Wider's misconduct.  Ziccardi's failure to address, then and there, Wider's misconduct could have no other effect but to empower Wider to persist in his behavior.  Under these circumstances, the Court equates Ziccardi's silence with endorsement and ratification of Wider's misconduct.[20]  This endorsement and ratification by Ziccardi is the functional equivalent of "advising [Wider's] conduct" under Rule

_____

[20]     Ziccardi's endorsement of Wider's evasive and incomplete answers and failure to answer is further evidenced by Ziccardi's statements on the record.  See, e.g., Wider Dep., Nov. 8, 2007, at 363:17-365:9 (challenging opposing counsel to "file whatever motion you want to file" after Wider had improperly refused to answer a question); id. at 366:15-367:3 ("Take whatever action you want to take.  I mean, he is trying to answer the questions and he is answering the questions and he will continue to answer the questions.").  Ziccardi's endorsement of Wider's conduct is most clearly shown by these statements: Ziccardi endorsed Wider's misconduct so thoroughly that he dared opposing counsel to file the instant motion to compel.

37(a)(5)(A).

Rule 37(a)(5)(A) provides for sanctions against the "party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both." Fed. R. Civ. P. 37(a)(5)(A). Because Ziccardi's actions and inaction at Wider's deposition constitute the functional equivalent of "advising" Wider's misconduct, Ziccardi must compensate GMAC for the expense it incurred in having to file the instant motion to compel. See Hutto, 437 U.S. at 690 n.14 ("The award . . . makes the prevailing party whole for expenses caused by his opponent's obstinacy.").[21]

Accordingly, because the circumstances here do not make the imposition of sanctions unjust, Ziccardi will be ordered to pay to GMAC, jointly and severally with Wider, the $13,026.00 in fees and expenses that GMAC incurred in connection with the motion to compel. See supra Part III.B.3.a.

---

[21] Even if Rule 37(a)(5)(A) did not contemplate such sanctions, the Court would be authorized to sanction Ziccardi pursuant to its inherent authority. See In re Cendant Corp., 260 F.3d 183, 199 (3d Cir. 2001) ("This Court . . . has recognized the authority of district courts to wield sanctioning power, in the form of the court's 'inherent authority,' where necessary to preserve the integrity of the judicial process."); see also Tr., Dec. 7, 2007, at 5 (providing notice to Ziccardi that the Court may consider sanctions pursuant to its "inherent power"); supra Part IV.B.2.b (noting that Ziccardi engaged in bad faith conduct, which is a prerequisite for the imposition of sanctions pursuant to the Court's inherent authority).

b.   Violation of Rule 30(d)(2)

As discussed above, "[t]he court may impose an appropriate sanction--including the reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2).

The Court has no difficulty finding that Ziccardi's inaction impeded, delayed, and frustrated Wider's fair examination.[22]  For example, had Ziccardi prevented Wider from improperly interposing his own objections, the deposition would have proceeded in a much more expeditious manner.  Had Ziccardi curbed Wider's abusive bullying of counsel for GMAC, counsel for GMAC would not have been forced to adjourn the deposition before its completion.  Had Ziccardi warned Wider that providing evasive and incomplete answers would result in sanctions, the deposition could have been completed without requiring the Court's intervention.  Instead, Ziccardi's persistent inaction in the face of Wider's gross misconduct impeded, delayed, and

_____

[22]   Rule 30(d)(2) does not require that an attorney take some affirmative act in order to frustrate a deposition, but rather contemplates sanctions for attorney inaction as well.  See Fed. R. Civ. P. 30(d)(2) (authorizing sanctions upon any "person who impedes, delays, or frustrates the fair examination of the deponent"); see, e.g., Redwood, 476 F.3d at 467-69 (imposing Rule 30(d)(2) sanctions upon an attorney for failing to suspend a contentious and fruitless deposition, failing to seek a protective order that would have cured the confidentiality dispute hindering the deposition, and instead improperly instructing his client not to answer questions).

contributed to the total frustration Wider's deposition.

Therefore, Ziccardi will be sanctioned for violating Rule 30(d)(2).  The Court will order Ziccardi to pay to GMAC, jointly and severally with Wider, the $16,296.61 in costs and fees incurred by GMAC in connection with the deposition.  <u>See</u> <u>supra</u> Part III.B.3.b.


V.   CONCLUSION

Wider's conduct was outrageous.  Ziccardi's complicity is inexcusable.  Therefore, sanctions will be imposed.

It is the Court's hope that these sanctions will motivate Wider and HTFC to proceed in a civil and expeditious manner with this deposition and the remainder of discovery, and Ziccardi to adhere faithfully to the Federal Rules of Civil Procedure.[23]  Otherwise, more severe sanctions will follow.[24]

---

[23]    As an officer of the Court admitted <u>pro hac vice</u>, Ziccardi is subject to the Pennsylvania Rules of Professional Conduct.  <u>See id.</u> ("Acts or omissions by an attorney admitted to practice before this Court . . . which violate the [Pennsylvania] Rules of Professional Conduct . . . shall constitute misconduct and shall be grounds for discipline.").  Ziccardi's conduct at Wider's deposition also violated several Rules of Professional Conduct.  <u>See, e.g.</u>, Pa. R. Prof'l Conduct 8.4(d) (providing that it is a violation of the rules to "engage in conduct that is prejudicial to the administration of justice"); Pa. R. Prof'l Conduct 3.5 & cmt 5 (providing that "[a] lawyer shall not . . . engage in conduct intended to disrupt a tribunal," which includes "a deposition"); Pa. R. Prof'l Conduct 3.4 & cmt. 1 (providing that an attorney may not "unlawfully obstruct another party's access to evidence," which includes using "obstructive tactics in discovery procedure").  Ordinarily, a disciplinary authority is the proper forum for determining whether professional discipline

The motion to compel and for sanctions (doc. no. 34) will be granted.  Sanctions will be imposed on Aaron Wider and Joseph Ziccardi, jointly and severally, in the amount of $29,322.61.  An appropriate order follows.

---

is warranted for violations of the Rules of Professional Conduct.  See Greenfield v. U.S. Healthcare, Inc., 146 F.R.D. 118, 128 (E.D. Pa. 1993).  The Court will refrain from referring this matter to a disciplinary authority in this case, however, because the sanctions imposed pursuant to the Federal Rules of Civil Procedure are sufficient to achieve the remedial purpose of the Rules of Professional Conduct.  Should the misconduct continue, however, referral to a disciplinary authority may be considered.

[24]    See, e.g., Nat. Grange Mut. Ins. Co. v. Sharp Equip. Co., No. 01-0628, 2002 WL 442823, at *7-8 (E.D. Pa. 2002) ("One additional and important factor is that all of the evasive, untruthful, delaying, and combative responses to deposition questions were supplied by Mr. Korey Blanck, the president and sole shareholder of Sharp Equipment Company.  As his outrageous conduct during his depositions is the primary reason for the pending motion for sanctions, we weigh this factor very strongly in favor of dismissing Sharp Equipment's and Mr. Blanck's claims and counter-claims.").

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GMAC BANK,                           :    CIVIL ACTION
                                     :    NO. 06-5291
                    Plaintiff,       :
                                     :
          v.                         :
                                     :
HTFC CORP.,                          :
                                     :
                    Defendant.       :

_____   **O R D E R**

     **AND NOW**, this **29th** day of **February, 2008,** for the
reasons stated in the accompanying Memorandum, it is hereby
**ORDERED** that Plaintiff's motion to compel and for sanctions (doc.
no. 34) is **GRANTED.**

     **IT IS FURTHER ORDERED** that the deposition of Aaron
Wider shall take place at the U.S. Courthouse, 601 Market Street,
Philadelphia, PA, before a magistrate judge, within 30 days of
the date of this order, at a date and time to be designated by
the magistrate judge.

     **IT IS FURTHER ORDERED** that Aaron Wider and Joseph
Ziccardi shall pay, jointly and severally, to GMAC Bank the
amount of $13,026.00, representing the fees and expenses incurred
by GMAC Bank in connection with the instant motion to compel by
**March 25, 2008.**

     **IT IS FURTHER ORDERED** that Aaron Wider and Joseph
Ziccardi shall pay, jointly and severally, the amount of
$16,296.61, representing the expenses and 75% of the fees

incurred by GMAC Bank in connection with Wider's deposition in New York, NY on September 26 and November 8, 2007, by **March 25, 2008.**

      **IT IS FURTHER ORDERED** that the motion for protective order (doc. no. 39) is **DENIED without prejudice.**[25]

      **IT IS FURTHER ORDERED** that Defendant shall produce a copy of the documents filed under seal pursuant to the order of December 21, 2007 (doc. no. 46) to Plaintiff.

      **AND IT IS SO ORDERED.**

               s/ Eduardo C. Robreno
              **EDUARDO C. ROBRENO, J.**

---

[25]    See Pansy v. Borough of Stroudsburg, 23 F.3d 772 (3d Cir. 1994).  HTFC does not explain, as to each document or set of documents, why the documents should be designated confidential.